IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SANITARIOS LAMOSA, S.A. DE C.V., §
                                 §
            Plaintiff,           §
                                 §
v.                               §
                                 §  CIVIL ACTION NO. H-04-2973
DBHL, INC., DEARBORN BRASS       §
OATEY CO., OATEYSCS SUPPLY       §
CHAIN SERVICE, and MOEN          §
INCORPORATED,                    §
                                 §
            Defendants.          §

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Sanitarios Lamosa, S.A. De C.V. ("Lamosa"), filed this lawsuit against defendants, DBHL, Incorporated ("DBHL"), Dearborn Brass, Oatey Company ("Oatey"), Oateyscs Supply Chain Service, and Moen Incorporated ("Moen"), asserting diversity jurisdiction under 28 U.S.C. § 1332 and alternative federal question jurisdiction under 28 U.S.C. § 1331.[1] Pending before the court are defendant Moen's Partial Motion to Dismiss Lamosa's Second Amended Complaint (Docket Entry No. 43), defendant Moen's Memorandum of Law in Support of Its Partial Motion to Dismiss Lamosa's Second Amended Complaint (Docket Entry No. 44), and Lamosa's Response to Moen's Partial Motion to Dismiss Lamosa's

---

[1]See Lamosa's Second Amended Complaint, Docket Entry No. 39, p. 6 ¶¶ 33-34.

Second Amended Complaint (Docket Entry No. 51).[2]  For the reasons explained below, Moen's Partial Motion to Dismiss (Docket Entry No. 43) will be denied.

## I.  **Factual Allegations**

Plaintiff alleges that defendants Oatey, DBHL, and Moen manufacture toilet supply parts, including ballcocks.  A ballcock is a self-regulating toilet part controlling the supply of water in a toilet tank with a float connected to a valve that opens or closes with a change in water level.  Moen engineered, designed, and tested a new ballcock product line and the manufacturing process that would produce the new ballcock line.  The new manufacturing process changed the material used to manufacture the ballcocks from polyvinyl chloride to polypropylene.  Moen marketed the new product line to Oatey in a May 31, 2002, meeting.  On September 30, 2002, Oatey purchased the business that Moen had developed to manufacture, market, and sell the ballcocks.

Oatey and DBHL manufactured the polypropylene ballcocks from September 1, 2003, to March 1, 2004.  The new ballcocks were defective, cracking at a significantly increased rate.  Unaware of this defect, plaintiff purchased the polypropylene ballcocks from

---

[2]Lamosa incorporated by reference its Response to Moen's previous Partial Motion to Dismiss, Docket Entry No. 35, into its current response to Moen's Partial Motion to Dismiss, Docket Entry No. 51.  The court will refer separately to the two responsive documents, differentiating them by docket entry number.

Oatey and DBHL and installed them in toilets that plaintiff later distributed to its customers. Because of the defect, homes have been flooded, plaintiff's reputation has been damaged, and plaintiff has incurred significant costs to fix the problems caused by the failure of defendants' ballcocks.

## II. Moen's Partial Motion to Dismiss

Moen argues that plaintiff's negligence-based causes of action, as well as plaintiff's causes of action for breach of implied warranty of merchantability and implied warranty for fitness for a particular purpose, should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.

### A. Standard of Review

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S.Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id. "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with

the allegations." Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 998 (2002) (quoting Hishon v. King & Spalding, 104 S.Ct. 2229, 2232 (1984)).

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Id. at 997 (quoting Scheuer v. Rhodes, 94 S.Ct. 1683, 1686 (1974)).

Dismissal under Rule 12(b)(6) can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged in support of a cognizable legal theory. In re Azuriz Corp. Securities Litigation, 198 F.Supp.2d 862, 877 (S.D. Tex. 2002). But courts "may not dismiss on the pleadings if the allegations support relief on any possible theory." Coghlan v. Wellcraft Marine Corp., 240 F.3d 449, 452 (5th Cir. 2001) (citing Cinel v. Connick, 15 F.3d 1338, 1341 (5th Cir. 1994)).

Under the Federal Rules of Civil Procedure, a complaint must include a short, plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). A plaintiff must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Lovick v. Ritemoney Ltd., 378 F.3d 433, 438 (5th Cir. 2004) (quoting Swierkiewicz, 122 S.Ct. at 998).

While federal law establishes the standards for a Rule 12(b)(6) dismissal, a federal court sitting in diversity

applies the law of the state in which it sits, including that state's conflict of law rules. Erie Railroad Co. v. Tompkins, 58 S.Ct. 817 (1938); Vasquez v. Bridgestone/Firestone, Inc., 325 F.3d 665, 674 (5th Cir. 2003). In the absence of a contractual choice of law provision, Texas choice of law rules state that "the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." Duncan v. Cessna Aircraft, 665 S.W.2d 414, 421 (Tex. 1984). Plaintiff has sued under various Texas state law causes of action, and both plaintiff and Moen direct the court to Texas law on the issues. Therefore, the court will apply Texas law in analyzing the substance of the causes of action.

**B. Negligence-based Causes of Action**

Moen seeks dismissal of all negligence-based causes of action that plaintiff asserts against it (gross negligence, negligence, negligent misrepresentation, and product liability design defect) based on the economic loss doctrine.[3] Under the economic loss doctrine a plaintiff seeking to recover economic losses to the subject of a contract may only sue for breach of contract, not in tort. Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986). Texas law does not permit recovery under a negligence theory for economic losses resulting from damages to a defective

---

[3]Moen's Partial Motion to Dismiss Lamosa's Second Amended Complaint, Docket Entry No. 43.

product.  Arkwright-Boston Manufacturers Mutual Ins. Co. v. Westinghouse Electric Corp., 844 F.2d 1174, 1177-78 (5th Cir. 1988).

Plaintiff and Moen do not dispute this general recitation of Texas law.[4] The parties disagree as to how or whether the economic loss doctrine applies to this case. Moen argues that the doctrine precludes plaintiff from pleading negligence causes of action. Plaintiff argues that the economic loss doctrine does not apply here for three reasons: first, because plaintiff's allegation of damage to good will and business reputation constitutes noneconomic loss; second, because the mitigation of imminent harm exception applies; and third, because plaintiff alleges damage to "other property" it owned.

### 1. Definition of Economic Loss

Moen argues that damage to plaintiff's good will and business reputation constitutes economic loss.[5] Plaintiff attempts to short-circuit Moen's argument by arguing that the damages it seeks for loss of good will and injury to business reputation constitute

---

[4]Since plaintiff does not dispute that four of its causes of action (gross negligence, negligence, negligent misrepresentation, and products liability design defect) are negligence-based, the court will address all of these causes of action together.

[5]Moen's Memorandum of Law in Support of Its Partial Motion to Dismiss Lamosa's Second Amended Complaint, Docket Entry No. 44, pp. 4-7.

-6-

noneconomic damages that are not barred by the economic loss rule.[6] In support of its arguments plaintiff cites Texas Civil Practice and Remedies Code § 41.001(12), which states in pertinent part that "'[n]oneconomic damages' means damages awarded for purposes of compensating a claimant for . . . injury to reputation and all other nonpecuniary losses of any kind." The next section states that "[t]his chapter applies to any action in which a claimant seeks damages relating to a cause of action." TEX. CIV. PRAC. & REM. CODE § 41.002(a). Plaintiff argues that by grouping "injury to reputation" in the same section with "physical impairment" and "physical pain and suffering" the legislature has explicitly distinguished injury to reputation from "compensatory damages intended to compensate a claimant for actual economic or pecuniary loss." TEX. CIV. PRAC. & REM. CODE § 41.001(4).

Plaintiff conflates two different rules of law: the statutory definitions governing types of damages and a court-made rule regarding causes of action. The Texas Supreme Court uses a two-pronged approach to determine whether an action sounds in contract or tort. First, the court analyzes the source of the duty. The

---

[6]Lamosa's Response to Moen's Partial Motion to Dismiss Lamosa's Second Amended Complaint, Docket Entry No. 51, p. 2. Plaintiff also argues that a proprietary interest is not required for recovery in negligence citing Signal Oil and Gas Co. v. Universal Oil Products, 572 S.W.2d 320 (Tex. 1978). The case does not support plaintiff's contention. In Signal Oil the plaintiff was seeking recovery for collateral property damage to its own plant in addition to damages for the defective part itself. Signal Oil, 572 S.W.2d at 325.

court then analyzes the nature of the remedy sought by the plaintiff. Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc., 960 S.W.2d 41, 45 (Tex. 1998). The Texas Supreme Court has held that "[t]he nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of the contract itself, the action sounds in contract alone." Jim Walter Homes, 711 S.W.2d at 618; see also Southwestern Bell Telephone Co. v. DeLanney, 809 S.W.2d 493, 495 (Tex. 1991); Indelco, Inc. v. Hanson Industries N.Am.-Grove Worldwide, 967 S.W.2d 931, 932-33 (Tex. App. -- Houston [14th Dist.] 1998, pet. denied). In the products liability context, "[i]n transactions between a commercial seller and commercial buyer, when no physical injury has occurred to persons or other property, injury to the defective product itself is an economic loss governed by the Uniform Commercial Code." Mid-Continent Aircraft Corp. v. Curry County Spraying Service, Inc., 572 S.W.2d 308, 313 (Tex. 1978). The economic loss doctrine applies to negligence-based product liability actions as well as those based on strict liability. Murray v. Ford Motor Co., 97 S.W.3d 888, 891 (Tex. App. -- Dallas 2003, no pet.).

The economic loss doctrine does not use the statutory definition of "noneconomic damage" to determine whether the type of relief sought by a plaintiff is "economic loss" or "noneconomic

loss" for purposes of the economic loss doctrine.  Texas courts instead define economic loss in the following way:

> Economic loss may be either direct or consequential . . . .  Direct economic loss may be said to encompass damage based on insufficient product value; thus, direct economic loss may be 'out of pocket' – the difference in value between what is given and received' or 'loss of bargain' – the difference between the value of what is received and its value as represented.  Direct economic loss also may be measured by costs of replacement and repair.  Consequential economic loss includes all indirect loss, such as loss of profits resulting from inability to make use of the defective product.

Nobility Homes of Texas, Inc. v. Shivers, 557 S.W.2d 77, 78 (Tex. 1977) (quoting Note, Economic Loss in Products Liability Jurisprudence, 66 Colum. L. Rev. 917, 918 (1966)).  See also Arkwright, 844 F.2d at 1177.  Tort recovery for noneconomic loss is only available to a product liability plaintiff when there is physical injury -- either to person or property.  Nobility Homes, 557 S.W.2d at 79-81.

Following the Texas Supreme Court's guidance, this court first examines the nature of the duty.  Here, it lies in tort as to plaintiff's negligence claims.  Texas courts have adopted the economic loss doctrine for such claims.  The court must then examine the nature of the remedy sought.  To escape the boundaries of the economic loss doctrine, the remedy sought must be damages arising from physical injury to something other than the product itself.  Concrete, physical injury is required, rather than injury to plaintiff's interests.  Because plaintiff's allegations of lost

good will and injury to business reputation do not allege personal injury or injury to property other than the product sold, the economic loss doctrine precludes plaintiff from pursuing its negligence-based causes of action.

2. <u>Mitigation of Imminent Harm</u>

Plaintiff next argues that the economic loss rule is not applicable because of the "mitigation of imminent harm" exception.[7] As authority for this exception, plaintiff cites <u>Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.</u>, 71 F.3d 198 (5th Cir. 1995). In <u>Corpus Christi Oil</u> the Fifth Circuit allowed the plaintiff to recover in tort for voluntary losses undertaken by the plaintiff to avoid greater physical damages to its property that might have rendered the defendant liable for larger sums. <u>Corpus Christi Oil</u>, 71 F.3d at 202.

Moen argues that unlike the plaintiff in <u>Corpus Christi</u>, Lamosa did not voluntarily damage its own property because Lamosa did not retain a proprietary interest in the ballcocks or obtain one in the toilets or homes of its customers after the toilets were sold and at the time the ballcocks allegedly failed.[8] Plaintiff responds that it did incur damage to its own property in removing

---

[7]Lamosa's Response to Moen's Partial Motion to Dismiss, Docket Entry No. 35, pp. 5-6 ¶¶ 13-19.

[8]Moen's Memorandum of Law, Docket Entry No. 44, p. 10.

ballcocks from some of the toilet tanks before the tanks were sold.[9] Plaintiff also argues that the owners of homes with property damage have assigned their claims to plaintiff.[10]

Most of these facts are alleged, however, in plaintiff's Responses to Moen's Partial Motion to Dismiss, rather than in its Second Amended Complaint.[11] Lamosa's Second Amended Complaint merely alleges that it "purchased subject ballcocks . . . and installed many of the subject ballcocks in toilets that Lamosa later distributed to Lamosa's customers. Due to the defect, homes have been flooded, Lamosa's reputation has been damaged, and Lamosa has incurred significant costs to fix defendant's problem . . . ."[12] Lamosa alleges damages for amounts paid to replace the defective ballcocks.[13] Although the Second Amended Complaint does not specifically allege when the defective ballcocks were replaced, it does not limit plaintiff's allegations of ballcock replacement to toilets in customers' homes. The court thus concludes that the pleading suffices to notify Moen that ballcocks were replaced in

---

[9]Lamosa's Response, Docket Entry No. 51, p. 3.

[10]Id. at 4.

[11]Lamosa's Response, Docket Entry No. 35, p. 2 ¶ 7, p. 6 ¶ 17; Lamosa's Response, Docket Entry No. 51, p. 3.

[12]Id. at p. 3 ¶ 3 (emphasis omitted).

[13]Lamosa's Second Amended Complaint, Docket Entry No. 39, p. 15 ¶ 113a.

toilets still owned by plaintiff.  In fact, Moen acknowledged plaintiff's ballcock replacement in the pre-sale toilets when it argued that "[w]ith regard to physical damage supposedly sustained by Lamosa's unsold toilet tanks, this damage too is of no moment."[14]

The toilet tanks were plaintiff's "own" property while still in its warehouse, prior to sale.  When plaintiff replaced the allegedly defective ballcocks in those tanks, it voluntarily incurred damage to its own property.  Plaintiff's alleged removal of the ballcocks from the toilet tanks before the tanks were sold thus constitutes mitigation sufficient to plead a cause of action under the Corpus Christi exception.

3. <u>Physical Damage to "Other Property"</u>

Although the economic loss doctrine prohibits recovery in tort for injury to the product that is the subject of the contract, the rule does not extend to damages to other property. <u>Signal Oil and Gas Co. v. Universal Oil Products</u>, 572 S.W.2d 320, 325 (Tex. 1978). A plaintiff may recover in tort for damages to other property caused by the defective product. <u>Id.</u> The relevant distinction is what constitutes "other property" for the purposes of the economic loss doctrine.

Moen argues that the economic loss doctrine applies because the ballcocks did not cause any damage to plaintiff's other

---

[14]Moen's Memorandum of Law, Docket Entry No. 44, p. 11.

property. Plaintiff disagrees, claiming physical damage to its proprietary interest in homes, toilet tanks, its product line, and good will.[15] As explained above, damages for loss of good will and injury to reputation can only be recovered in tort if they flow from actual physical damage or injury to property other than the product. Plaintiff appears to be arguing an additional property interest in its product line. Neither Moen nor plaintiff fully addresses this point in its pleadings. Moen does not respond at all to Lamosa's brief assertion of its proprietary interest in its product line. Since plaintiff failed to adequately brief this point by articulating any argument under the economic loss doctrine for treating its interest in its product line as a proprietary interest, the court will not consider this issue.[16] Left for the court to consider are plaintiff's arguments that damage to the toilet tanks and homes is damage to "other property."

The Texas Supreme Court has made clear that when a component part sold as part of a whole product fails and damages the whole product, the damage is to the whole product and the suit cannot be brought in tort. See Mid-Continent, 572 S.W.2d at 311-13. Plaintiff contends that the present case is distinguishable because it purchased the ballcock and placed the ballcock in its toilet

---

[15]Lamosa's Response, Docket Entry No. 35, pp. 6-7 ¶¶ 15-19.

[16]It is not the court's obligation to make the parties' arguments for them.

tank. "In this matter, the 'relevant product' is the ballcock, not the toilet tank. Lamosa did not buy the toilet tank from anybody. Hence the 'toilet tank' is 'other property.'"[17]

Moen argues that the toilet tanks are not "other property" because the ballcock is merely a component installed in a product, and damage to the product by its component part cannot serve as the basis for a cause of action in tort.[18] Moen cites two cases applying Texas law in support of its argument that the toilet tank is not "other property." See Alcan Aluminum Corp. v. BASF Corp., 133 F.Supp.2d 482 (N.D. Tex. 2001); Equistar Chemicals, L.P. v. Dresser-Rand Co., 123 S.W.3d 584 (Tex. App. -- Houston [14th Dist.] 2003, pet. filed). Moen also cites several cases from other jurisdictions in support of its argument. See, e.g., Sea-Land Service, Inc. v. General Electric Co., 134 F.3d 149 (3d Cir. 1998).

As Moen concedes, no Texas court has squarely addressed the issue of whether a component part manufacturer can be sued in tort for damage to a product by a commercial buyer who installs the component into its product. However, the Fifth Circuit has addressed a similar issue in Hininger v. Case Corp., 23 F.3d 124 (5th Cir. 1994), and a federal district court applying Texas law has squarely addressed the issue. In Hininger the Fifth Circuit held that the plaintiff could not recover economic losses from the component manufacturer in tort. Id. at 126-27. Similarly, a

---

[17]Lamosa's Response, Docket Entry No. 51, p. 4.

[18]Moen's Memorandum of Law, Docket Entry No. 44, pp. 11-13.

federal district court held that the Texas Supreme Court would reject an action in tort against a component supplier for damage to the completed product. Alcon Aluminum Corp. v. BASF Corp., 133 F.Supp.2d 482, 504-05 (N.D. Tex. 2001); see also Essex Ins. v. Blount, Inc., 72 F.Supp.2d 722, 725 (E.D. Tex. 1999). The Alcon court held that the complete product is not "other property" for purposes of the economic loss rule when an individually purchased component damages the completed product.

The court is persuaded that Moen's argument is a more accurate statement of Texas law. The ballcocks are components of toilets, which are the final product plaintiff sold. Plaintiff used the ballcock in assembling the toilet tank and toilet. Plaintiff alleges that the individually purchased component, the ballcock, failed, damaging the completed product, the toilets. Because the toilets are the completed product, neither damage to the toilet tank nor to the toilet itself constitutes damage to "other property" under Texas law.

Plaintiff also argues that because the homeowners assigned their claims to it, property damage to homes caused by overflowing toilets from defective ballcocks is damage to "other property" owned by plaintiff because of its proprietary interest in the homes.[19] Plaintiff did not plead any assignments in its Second Amended Complaint, and Moen does not directly address plaintiff's

---

[19]See Lamosa's Response, Docket Entry No. 35, p. 6 ¶ 16; Lamosa's Response, Docket Entry No. 51, p. 4.

argument regarding the assignments by merely stating that plaintiff does not own these homes.[20]

Black's Law Dictionary defines "proprietary interest" as "[t]he interest held by a property owner together with all appurtenant rights, such as a stockholder's right to vote the shares." Black's Law Dictionary 816 (7th ed. 1999). Proprietary interest has also been defined as "one who has an interest in, control of, or present use of certain property." Evans v. United States, 349 F.2d 653, 658 (5th Cir. 1965).

Lamosa's Second Amended Complaint does not refer to any assignments given it by the homeowners. It remains unclear even from plaintiff's responses exactly when these assignments were obtained in relation to the damage to the houses or to plaintiff's mitigation with its "army of plumbers" or what form the assignment from the homeowners to Lamosa took.[21] Although Federal Rule of Civil Procedure 8 only requires notice pleading, if plaintiff wishes to assert causes of action on the basis of these assignments, plaintiff needs to allege the facts relating to assignments in its complaint. Plaintiff asks the court to deny Moen's motion based on facts not in the Second Amended Complaint, and not even fully briefed in its responsive pleadings. The court

---

[20]Moen's Memorandum of Law, Docket Entry No. 44, p. 10.

[21]See Lamosa's Response, Docket Entry No. 35, p. 2 ¶ 7 ("Lamosa hired an army of third-party plumbers to go into homes, remove the defective ballcocks, and place, in their stead, non-defective ballcocks.").

-16-

declines to speculate on what type of assignments Lamosa has obtained from the homeowners or when they were obtained. To assert any claims as an assignee, plaintiff must allege the assignments in its complaint. Even under the relaxed requirements of notice pleading, plaintiff must set forth in its complaint what damage it incurred to property in which it had a proprietary interest. This includes alleging the proprietary interest and its basis in the assignments.

**C. Breach of Implied Warranty of Merchantability and Fitness for a Particular Purpose**

Moen argues that plaintiff cannot assert breach of implied warranties of merchantability and fitness for a particular purpose because the Texas Uniform Commercial Code (Texas UCC) applies only to the sale of goods, not to the rendition of services, and plaintiff pleaded only the rendition of services.[22] Plaintiff's response states that it "alleges in its live complaint that Moen sold the product line to DBHL and by doing so placed the ballcocks into the stream of commerce."[23]

By the express terms of the Product Liability Act, Moen's argument fails.[24] The legislature has defined a products liability

---

[22]Moen's Partial Motion to Dismiss, Docket Entry No. 43, pp. 3-4 ¶ 6.

[23]Lamosa's Response, Docket Entry No. 51, p. 5 (emphasis omitted).

[24]Although there is an argument that an implied warranty claim cannot stand against an upstream manufacturer when a plaintiff only

(continued...)

-17-

action as "any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." TEX. CIV. PRAC. & REM. CODE ANN § 82.001(2). A seller in a product liability action "means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." Id. § 82.001(3). Because plaintiff alleged that Moen placed the ballcocks into the stream of commerce,[25] Moen's motion to dismiss plaintiff's causes of action on the implied warranty claims fails.

### III. Amendment of Complaint

Federal Rule of Civil Procedure 15(a) permits amendment of a pleading after a responsive pleading has been served with leave of court. However, the court should freely give leave to amend "when

---

[24](...continued)
asserts economic loss, see, e.g., Hininger, 23 F.3d at 128-29, Moen did not argue this in its Partial Motion to Dismiss, and the court has determined that plaintiff survives the Rule 12(b)(6) motion based on the economic loss doctrine for the negligence causes of action.

[25]Lamosa's Second Amended Complaint, Docket Entry No. 39, p. 8 ¶ 47.

-18-

justice so requires." Fed. R. Civ. P. 15(a). Rule 15 requires a trial court "to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" Smith v. EMC Corp., 393 F.3d 590, 595 (5th Cir. 2004) (quoting Lyn-Lea Travel Corp. v. American Airlines, 283 F.3d 282, 286 (5th Cir.), cert. denied, 123 S.Ct. 659 (2002)).

Although the court will deny Moen's Partial Motion to Dismiss Plaintiff's Second Amended Complaint, there are several issues referred to in this Memorandum Opinion and Order that cannot be resolved unless plaintiff pleads more specifically.[26]

## IV. Conclusions and Order

Plaintiff alleges that it voluntarily undertook damage to its own property by replacing ballcocks in its still-owned toilets to avoid even greater damages caused by the flooding of toilets with allegedly defective ballcocks. On this limited basis, the pleadings are sufficient to prevent the court from dismissing plaintiff's negligence causes of action. Plaintiff has further alleged sufficient facts to assert its causes of action under breaches of implied warranties. Because the court concludes that

---

[26]At this point plaintiff has only pleaded a cause of action in tort that would allow it to recover the costs of mitigating the damages by replacing the defective ballcocks in the unsold toilet seats. See Murray, 97 S.W.3d 888, 891 ("[E]ven where there is collateral property damage, the economic loss rule bars recovery in tort for injury to the defective product itself." (internal citations omitted)).

-19-

plaintiff has alleged causes of action that satisfy the standards of Fed. R. Civ. P. 12(b)(6) for negligence, gross negligence, negligent misrepresentation, product liability design defect, breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose, Moen's Partial Motion to Dismiss Lamosa's Second Amended Complaint (Docket Entry No. 43) is **DENIED**.

Plaintiff has thirty days to file an amended complaint and to eliminate, or plead more precisely, the basis for asserting its other proprietary interests for its negligence-based causes of action.[27]

**SIGNED** at Houston, Texas, on this 29th day of September, 2005.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[27]Should plaintiff amend its complaint, and Moen again seek to dismiss, the parties should fully brief their arguments and not refer to previously filed motions or responses. The court is not satisfied that the current status of the briefing is sufficient for the court to resolve the outstanding issues once the factual predicate is adequately pleaded.